# In re ESTATE of RALPH STEVEN VAUGHN.

## RALPH GORDON VAUGHN, Appellant, v. DOROTHY JEAN VAUGHN, Appellee. —438 S.W.2d 760

Middle Section.  October 25, 1968.

Certiorari Denied March 3, 1969.

156

George E. Barrett, John G. Mitchell, Jr., Nashville, for appellant.

Jack Green, of Butler & Green, Nashville, for appellee.

PURYEAR, J. This case involves a dispute between the divorced parents of a deceased seventeen year old boy over the matter of appointment of an administrator of the estate of said minor.

The minor, Ralph Steven Vaughn, was the child of Ralph Gordon Vaughn and Dorothy Jean Vaughn.

On the 6th day of October, 1961, the mother, Dorothy Jean Vaughn, was granted an absolute divorce from the father, Ralph Gordon Vaughn, in the Fourth Circuit Court of Davidson County, Tennessee, by a decree entered in Minute Book 22, page 347, on the minutes of said Circuit Court, and we will hereinafter refer to this as the first decree, since a modification was made by another decree, which we will mention later.

In addition to dissolving the bonds of matrimony between the parties, this first decree made the following disposition as to custody of the minor children of the parties:

"It is further ORDERED that complainant be granted the exclusive custody, care and control of the minor children of the parties. The matter of support and maintenance for said children is specifically reserved by the court." (P. 5, Record)

Since the deceased, Ralph Steven Vaughn, was one of the minor children mentioned in the foregoing decree, the exclusive custody of said Ralph Steven Vaughn was thereby granted to his mother, who was complainant in the divorce suit. This decree made no provision for the father to visit the children or to have them visit him.

Thereafter, in April, 1964, the Fourth Circuit Court of Davidson County, Tennessee, modified the first decree in such divorce case by entering a consent decree, which will hereinafter be referred to as the second decree, and which contained the following provision:

"IT IS FURTHER ORDERED by the court that defendant be allowed to visit his children at reasonable times, and may have custody of said children on the week end day's so long as they are returned to the custody of petitioner at the close of day." (P. 34, Record)

In March, 1967, the minor, Ralph Steven Vaughan, was killed in an automobile accident, and at the time of his death he had never been married.

Thereafter, the father applied to the Probate Court of Davidson County, Tennessee, for letters of administration upon the estate of the deceased minor. Shortly after the father applied for letters of administration, the mother also filed a petition in said Probate Court in which she alleged that, in the divorce suit, she was granted exclusive custody of the minor and therefore, pursuant to T.C.A. Section 31-201(4) she was the sole next of kin to the deceased and was entitled to letters of administration, to be issued either to herself or to some person of her choosing.

In this petition she also alleged that said Ralph Gordon Vaughn was not entitled to letters of administration and prayed that such letters issue to Mr. Ramon Womack, a member of the Davidson County Bar.

The matter was tried before the Honorable Shelton Luton, Judge of said Probate Court, upon oral proof and documentary evidence, including the above mentioned

decrees of the Fourth Circuit Court of Davidson County, and, as a result of such trial, the Probate Judge denied the application of Ralph Gordon Vaughn for letters of administration and granted such letters of administration to the said Ramon Womack.

After a motion for reconsideration had been filed by the father and overruled by the Probate Court, the father prayed and perfected an appeal to this Court and filed the following assignments of error:

"I. The Probate Court erred in finding that Dorothy Jean Vaughn had exclusive custody of the deceased minor, Ralph Steven Vaughn, at the time of his death.

II. The Probate Court erred in ruling that Dorothy Jean Vaughn had the right to nominate an administrator to serve in her place, when at the time of nomination, she was serving a sentence in state penitentiary for women for conviction of a felony.

III. The Probate Court erred in appointing Ramon E. Womack and not appointing the Appellant, Ralph Gordon Vaughn, to serve as administrator of this estate."

Of course, many of the facts of the case appear from the technical record of the divorce suit between the parties. However, before discussing the assignments of error, we will briefly state the additional facts of case, most of which are undisputed.

Prior to the death of the minor child, the father filed a petition in the Fourth Circuit Court of Davidson County, Tennessee, designated as "PETITION FOR CHANGE IN CUSTODY AND SUPPORT." Among other allegations this petition contains the following:

160

"That in the said decree of divorce that *she received the care and custody of the three children,* with your Petitioner, the Defendant, ordered to pay certain support payments.

Your Petitioner will show that he has paid these support payments and that at present he is current with these support payments.

Your Petitioner will further show that since the end of the school year of 1964 that his son, *Ralph S. Vaughn, to whom the original Complainant in this cause has custody,* has been living with your Petitioner. That the said Ralph S. Vaughn is now a young teenager and no longer desires to reside with his mother, but prefers to reside with your Petitioner.'' (emphasis supplied) (P. 14, Record)

The record does not show what action, if any, the Circuit Court took upon this petition.

Although the date of the filing of this petition does not appear from the record, it was apparently filed at some time after the second decree was entered in the divorce case by which the father was granted permission to have the children visit him on week ends, since such petition mentions the fact that the father had been ordered to pay $45.00 per week for support of the children and this order for the payment of such support does not appear in the first decree, but only in the second decree.

Upon trial of the case in Probate Court, the mother testified that for a period of somewhere between one and two years, prior to the death of the deceased minor, he had been living in the home of his father, but that this was over her objection and primarily for the purpose

of letting the minor complete his schooling at Two Rivers School and that at the end of the school year he was to return and live with her.

She denied that the second decree in the divorce case, by which the father was permitted to have the children visit him on week ends, was intended to divide the custody of the children between herself and the father and denied that she authorized her attorney to enter into any agreement, except for visitation rights.

Mr. Ramon E. Womack testified that the attorney representing the mother had contacted him and requested him to serve as administrator of the minor's estate and he was willing to act as such. No question is made about Mr. Womack's personal fitness to serve as administrator.

The father, Ralph Gordon Vaughn, testified that the deceased minor had been in his physical custody for a number of years prior to his death and he understood that the second decree entered in the divorce case, by which the children were permitted to visit him, was entered pursuant to an agreement for division of custody.

Only the above mentioned three witnesses testified upon trial of the case and their testimony constituted all of the evidence, except documentary evidence.

The first question which confronts us is raised by assignment of error number one, wherein the father assails the finding of the Probate Court that the mother had exclusive custody of the deceased minor at the time of his death.

In addition to his contention that he actually had physical custody of the minor at the time of his death, the father insists the second decree entered in the divorce

case actually divided the custody of the minor between the father and mother and counsel makes reference to the fact that the word "custody" is used in said decree in defining his rights to have the children visit him.

However, we have concluded that the rights granted to the father by this second decree were only visitation rights, regardless of the fact the word "custody" is used in defining such rights.

It is conceded that the first decree gave the mother exclusive custody and, had it not been for the entry of the second decree there would not be any debatable question arising about which parent was actually granted custody of the minor by Circuit Court.

In the case of Damron v. Damron, 212 Tenn. 14, 367 S.W.2d 476 (1963), the Supreme Court had occasion to consider the meaning of "custody" and "rights of visitation."

In discussing the distinction between the two terms the Supreme Court quoted with approval from McFadden v. McFadden, 206 Or. 253, 292 P.2d 795, wherein the Supreme Court of Oregon said:

" ' "Custody," in the sense we use it connotes, among other things, the right of the legal custodian to establish the legal domicile for the child, whereas such right does not abide with the parent who enjoys only the occasional right of visitation, i.e., the right to visit the child wherever it is, at certain time, or to have the child visit the parent for stipulated periods.' "

In McFadden supra, the Supreme Court also quoted with approval from Lerner v. Superior Court, 38 Cal.2d 676, 242 P.2d 321, wherein the Supreme Court of California defines "custody" as follows:

"The essence of custody is the companionship of the child and the right to make decisions regarding his care and control, education, health, and religion." Damron v. Damron, supra, p. 21, 367 S.W.2d p. 479.

It is significant that the second decree does not even permit the children to spend a night with their father, as shown by the following language: "so long as they are returned to custody of petitioner at the close of day."

■ When we consider the foregoing language in conjunction with the fact that the father filed a petition for change in custody and support, from which we have quoted above, we think the learned Probate Judge correctly concluded that at the time of the minor's death his mother had exclusive custody of him.

Apparently, when the father filed the petition for change of custody and support, he was of the opinion that the mother had exclusive custody.

■ The fact that the minor was actually living with his father at the time of his death makes no difference in the legal rights of the parties, which were settled and determined by the decrees of the Circuit Court in which the divorce was granted.

Therefore, the first assignment of error is respectfully overruled.

We will consider the second and third assignments together, because they raise interrelated questions.

The order of preference to be followed in granting of letters of administration is set forth in T.C.A. Section 30-109 which is as follows:

"30-109. Preference in granting of letters.—When any person shall die intestate in this state, administration

shall be granted to the widow of such person, if she make application for the same. For want of such application upon the part of the widow, the administration shall be granted to the next of kin, if such next of kin apply therefor. If neither the widow nor next of kin make application for administration, then the same shall be granted to the largest creditor proving his debt on oath before the county court, or county judge; provided, that when there are more than one next of kin, the county court may decide which of them shall be entitled to administration.''

■ Since the deceased was unmarried, it is conceded that the preference in granting letters of administration is to be determined by deciding who were his next of kin at the time of his death. The mother insists that by virtue of the provisions of T.C.A. Section 31-201(4) she was his sole next of kin and is therefore entitled to nominate some person to serve as administrator. This Code Section is as follows:

''31-201. (4) If no husband, wife or children, to the father and mother in equal parts, but if either father or mother be dead, then to the survivor of them, provided, however, that where the father and mother of a person dying intestate have been divorced by valid decree which commits the custody of such person to one of the parents to the exclusion of the other, then the personal estate of such person shall be distributed to that parent to whom such custody has been committed, as sole next of kin, to the exclusion of the other parent.''

■ Since the Probate Judge concluded that the mother had exclusive custody of the minor at the time of his

death, in which conclusion we have concurred, it necessarily follows that the mother was his sole next of kin.

The next question raised by the assignments of error is whether or not the mother had the right to nominate another person to serve in her stead as administrator.

It is conceded that at the time the mother filed her application for appointment of an administrator, she was serving a sentence in the State Penitentiary upon conviction of the offense of attempt to commit a felony. Although, from a practical standpoint, it would appear that her confinement in the penitentiary would make it impossible for her to serve as administratrix, we are not aware of any statute or any decision holding that her conviction of a felony would have the effect of forfeiting her rights of inheritance from her son under the statutes of descent and distribution.

The matter of allowing the next of kin to exercise a preference in the appointment of an administrator in the event such next of kin cannot or does not desire to act as such administrator, is discussed by the Supreme Court in the case of In re Wooten's Estate, 114 Tenn. 289, 85 S.W. 1105, wherein that Court said:

"While, therefore, we would not hold that the county court must in any event appoint the nominee of the next of kin, yet such nominee should be preferred, and unless there are valid reasons, the nominee should be appointed.

In other words, the next of kin is entitled to have such nominee appointed, if he is a fit and suitable person; and, in determining the question of fitness, the same rules and test must be made as would be if the next

of kin were applying in person." In re Wooten's Estate, supra, pp. 309, 310, 85 S.W. p. 1111.

■   Since there is no question about the personal fitness of Mr. Womack to serve as such administrator and he has expressed his willingness to do so, we think the Probate Judge was correct in ordering the appointment of Mr. Womack.

Counsel for the father devote a considerable portion of their brief to the argument that since the mother is not personally fit to serve as administratrix, then the person whom she has nominated should not be appointed by the Court.

■   We do not think there is any merit in this argument, since the personal unfitness of the mother for the performance of such a trust cannot possibly have any effect upon the personal fitness of one whom she has nominated for such appointment, especially since no attack has been made upon his fitness for such a trust.

For the foregoing reasons, we respectfully overrule assignments of error numbered two and three.

All the assignments of error having been considered and overruled, the judgment of the Probate Court is affirmed and the case is remanded to that Court for further proceedings. The appellant, Ralph Gordon Vaughn, will pay the costs of this appeal.

Shriver, P.J.(M.S.), and Todd, J., concur.