68 F.3d 474
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
James David LEWIS, Plaintiff-Appellant,
Liberty Mutual Insurance Group, Intervening Plaintiff,
v.
CATERPILLAR, INC. Defendant and Third-Party Plaintiff-Appellee,
Gene A. Wilson Enterprises, Inc., Third-Party Defendant,
Whayne Supply Company, Defendant.
 No. 94-5253.
 United States Court of Appeals, Sixth Circuit.
 Oct. 11, 1995.
 
 Before: WELLFORD, MILBURN, and SUHRHEINRICH, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff James David Lewis appeals the jury verdict for defendant Caterpillar, Inc. in this diversity action for personal injury. On appeal, the issues are (1) whether the district court erred in denying plaintiff's motion to remand the case to state court, (2) whether the district court erred in limiting the scope of discovery of prior similar accidents, (3) whether this court should enter sanctions against defendant for defendant's alleged improper response to discovery requests, (4) whether the district court erred in excluding certain exhibits, (5) whether the district court erred in excluding certain witnesses from testifying at trial, and (6) whether the district court erred by failing to instruct the jury on defendant's alleged failure to warn. For the reasons that follow, we vacate and remand.
 
 I.
 A.
 
 2
 On July 9, 1988, plaintiff James David Lewis, a resident of Louisa, Kentucky, was injured while he was operating a Caterpillar D8K bulldozer, which was manufactured by defendant Caterpillar, Inc., a Delaware corporation with its principal place of business in Illinois. While plaintiff was operating the bulldozer near Louisa, Kentucky, a hydraulic hose connected to the cylinder that raises and lowers the bulldozer blade ruptured causing hydraulic fluid to spray over the engine of the bulldozer and also on plaintiff. The fluid ignited, and plaintiff received burns over approximately 48% of his body.
 
 
 3
 The evidence at trial showed that the steel hydraulic hose ruptured because it was positioned against the hood of the bulldozer causing the two steel surfaces to grind against each other. Caterpillar presented evidence that its XT3 hydraulic hoses are made with four layers of steel wrappings that give them a hardness greater than that of ball-bearing steel. Caterpillar argued at trial that several conditions existing in the D8K at the time of the accident, but not existing at the time of the D8K's manufacture, caused the hydraulic hose to fail. Caterpillar presented evidence that at some point prior to the accident, the D8K had been hit with a force of 15,000 to 30,000 pounds. This force sheared off a bolt that stabilized the tube assembly to which the hydraulic hoses were connected and bent the tube assembly about 20 degrees.
 
 
 4
 In addition, Caterpillar presented evidence that the hoses in the D8K at the time of the accident were manufactured by someone other than Caterpillar and were an inch to an inch and a half too long. Because the hoses were too long, they made a larger loop thereby coming closer to the hood of the D8K. Further, evidence showed that the hoses, which had different types of connections on each end, had been installed backwards also causing the hoses to be positioned closer to the hood. Although Caterpillar's maintenance manual includes a visual depiction of how the hose is to be installed, the parties disputed whether this adequately explained the proper installation of the hoses.
 
 
 5
 On the other hand, plaintiff argued at trial that, notwithstanding these conditions, the D8K had a design defect that caused the accident in this case. Plaintiff's expert, Wayne Coloney, testified that the accident could have been avoided if Caterpillar had used a deflecting shield that would have prevented hydraulic fluid from spraying on the operator of a D8K should a hydraulic hose rupture. Plaintiff also argued that Caterpillar was aware of the propensity for and the danger of hydraulic hoses rupturing and causing fires on the D8K.
 
 B.
 
 6
 Plaintiff initiated this action on June 22, 1989 in the Lawrence [Kentucky] Circuit Court. In his complaint, plaintiff alleged strict liability in tort, negligence, and breach of warranty and named as defendants Caterpillar, Inc., the manufacturer of the bulldozer, and Whayne Supply Co., a Kentucky corporation with its principal place of business in Kentucky, which serviced the bulldozer prior to the incident at issue in this case. After plaintiff filed his complaint, Liberty Mutual Insurance Company ("Liberty Mutual"), a Massachusetts corporation with its principal place of business in Massachusetts, intervened as a plaintiff in the case. Liberty Mutual brought claims against both Caterpillar and Whayne Supply Co. for subrogation of worker's compensation benefits paid to Lewis on behalf of his employer and third-party defendant, Gene A. Wilson. While the case was pending in the state court, plaintiff entered into a settlement agreement with Whayne Supply Co. However, because Liberty Mutual was not included in the settlement agreement, it continued to assert its claims against Whayne Supply Co. Liberty Mutual also filed a cross-claim against Lewis for reimbursement for any worker's compensation paid him by Whayne Supply Co. with regard to Liberty Mutual's subrogation interest.
 
 
 7
 After learning of the settlement between plaintiff and Whayne Supply Co., Caterpillar removed the case to federal court, over Lewis' objection, on June 21, 1990. Plaintiff and Whayne Supply Co., however, did not file anything notifying the Lawrence Circuit Court of the settlement until August 2, 1990. Lewis subsequently filed a motion to remand the case to state court on the ground that because defendant Whayne Supply Co., a Kentucky corporation, remained a defendant in the case by virtue of Liberty Mutual's subrogation claim, there was not complete diversity at the time of the removal from the state court. The district court denied this motion on September 24, 1990.
 
 
 8
 Whayne Supply Co. and Liberty Mutual subsequently settled their claims on June 8, 1993. A jury trial commenced on November 15, 1993. The jury returned a verdict in favor of defendant Caterpillar, Inc. on November 22, 1993. Plaintiff then filed a motion for a new trial, but the district court denied this motion on February 1, 1994. This timely appeal followed.
 
 II.
 A.
 
 9
 Plaintiff argues that the district court erred in denying his motion to remand the case to state court. Specifically, plaintiff asserts that the district court lacked subject matter jurisdiction because complete diversity between the parties did not exist at the time of removal. Plaintiff bases this assertion on the fact that, at the time of removal, plaintiff, a Kentucky resident, continued to be a party to the case, and defendant Whayne Supply Co., a Kentucky corporation, remained a defendant in the case by virtue of intervening plaintiff Liberty Mutual's subrogation claim against it. Removal is a question of federal subject matter jurisdiction that we review de novo. Certain Interested Underwriters at Lloyd's London, England v. Layne, 26 F.3d 39, 41 (6th Cir.1994); Van Camp v. AT & T Information Sys., 963 F.2d 119, 121 (6th Cir.), cert. denied, 113 S.Ct. 365 (1992). When reviewing the denial of a motion to remand a case to state court, "we look to determine ' "whether the case was properly removed to federal court in the first place." ' " Van Camp, 963 F.2d at 121 (quoting Fakouri v. Pizza Hut of America, Inc., 824 F.2d 470, 472 (6th Cir.1987) (quoting Takeda v. Northwestern Nat'l Life Ins. Co., 765 F.2d 815, 818 (9th Cir.1985)). When an action is removed based on diversity, we must determine whether complete diversity exists at the time of removal. Higgins v. E.I. DuPont de Nemours & Co., 863 F.2d 1162, 1166 (4th Cir.1988). Under 28 U.S.C. Sec. 1332(a)(2), subject matter jurisdiction based on diversity of citizenship vests federal district courts with jurisdiction in cases of sufficient value between "citizens of a State and citizens or subjects of a foreign state." Id. A natural person's citizenship is determined by his domicile, while a corporation has the citizenship of the state of its incorporation and its principal place of business. Safeco Ins. Co. v. City of White House, 36 F.3d 540, 544 (6th Cir.1994). "Diversity jurisdiction attaches only when all parties on one side of the litigation are of a different citizenship from all parties on the other side of the litigation." SHR Limited Partnership v. Braun, 888 F.2d 455, 456 (6th Cir.1989). Accord Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267, (1806); Safeco Ins. Co., 36 F.3d at 545; and Certain Interested Underwriters, 26 F.3d at 42. In this regard, "[a] plaintiff seeking to bring a case into federal court carries the burden of establishing diversity jurisdiction." Certain Interested Underwriters, 26 F.3d at 41.
 
 
 10
 Caterpillar asserts that diversity jurisdiction was created when plaintiff settled with Whayne Supply Co. Thus, "[t]he question is simply whether, at the time of removal, the plaintiffs effectively 'ha[d] taken the resident defendant out of the case, so as to leave a controversy wholly between the plaintiff[s] and the nonresident defendant.' " Vasquez v. Alto Bonito Gravel Plant Corp., 56 F.3d 689, 692 (5th Cir.1995) (quoting American Car & Foundry Co. v. Kettelhake, 236 U.S. 311, 316 (1915)). See Mancari v. AC & S Co., 683 F.Supp. 91, 93 (D.Del.1988) (applying the voluntary act of the plaintiff doctrine and holding that a case may become removable after being initiated in state court where non-diverse defendant was dismissed from case leaving a new state of complete diversity between the parties). In this case, as plaintiff notes, Liberty Mutual continued to assert its claim against defendant Whayne Supply Co. after plaintiff settled with Whayne Supply Co.[1] Thus, at the time Caterpillar removed the case to federal court, plaintiff, a resident of Kentucky, remained a party to the case by virtue of his claim against defendant Caterpillar. Defendant Whayne Supply Co., a Kentucky corporation, was also a party to the case in light of intervening plaintiff Liberty Mutual's subrogation claim against it.[2] Thus, complete diversity did not exist at the time that the case was removed to federal court. Unfortunately, we must remand a case that has proceeded through judgment in the district court. We hold that the district court erred in denying plaintiff's motion to remand this case to the state court for lack of subject matter jurisdiction because complete diversity did not exist at the time this case was removed from the state court.[3]
 
 III.
 
 11
 For the reasons stated, the judgment of the district court is VACATED and this case is REMANDED to the district court.
 
 
 
 [1]
 Plaintiff claims that his settlement with Whayne Supply Co. was only partial and that he reserved a claim against Whayne Supply Co. for reimbursement for worker's compensation paid to him by Liberty Mutual. Lewis asserts that Liberty Mutual's subrogation claim against defendant Whayne Supply Co. was filed on behalf of Liberty Mutual and himself. We need not resolve this issue in light of our conclusion that because plaintiff and defendant Whayne Supply Co. remained parties to the case at the time of removal, diversity was not complete
 
 
 [2]
 Although Caterpillar argues on appeal that parties named in an intervening complaint are not included in diversity determinations, Caterpillar cites no authority for this proposition. This argument is not persuasive. This court has held under other circumstances that an intervening party may destroy diversity jurisdiction. Cf. Jenkins v. Reneau, 697 F.2d 160, 162 (6th Cir.1983) (holding that an intervening petition by a non-diverse indispensable party destroys diversity jurisdiction)
 
 
 [3]
 Because we hold that the district court lacked jurisdiction over this case, we do not reach plaintiff's other arguments on appeal